FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY S.,[1] | No. 1:20-cv-03114-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] | |
| | ECF Nos. 20, 21 |
| Defendant. | |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

1   Before the Court are the parties' cross-motions for summary judgment. ECF

2   Nos. 20, 21. The Court, having reviewed the administrative record and the parties'

3   briefing, is fully informed. For the reasons discussed below, the Court denies

4   Plaintiff's motion, ECF No. 20, and grants Defendant's motion, ECF No. 21.

**JURISDICTION**

6   The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

8   A district court's review of a final decision of the Commissioner of Social

9   Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

10  limited; the Commissioner's decision will be disturbed "only if it is not supported

11  by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

12  1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

13  reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

14  (quotation and citation omitted). Stated differently, substantial evidence equates to

15  "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

16  citation omitted). In determining whether the standard has been satisfied, a

17  reviewing court must consider the entire record as a whole rather than searching

18  for supporting evidence in isolation. *Id.*

19  In reviewing a denial of benefits, a district court may not substitute its

20  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

ORDER - 2

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

ORDER - 3

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

ORDER - 4

1    enumerated impairments, the Commissioner must find the claimant disabled and

2    award benefits.  20 C.F.R. § 416.920(d).

3        If the severity of the claimant's impairment does not meet or exceed the

4    severity of the enumerated impairments, the Commissioner must pause to assess

5    the claimant's "residual functional capacity."  Residual functional capacity (RFC),

6    defined generally as the claimant's ability to perform physical and mental work

7    activities on a sustained basis despite his or her limitations, 20 C.F.R. §

8    416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

9        At step four, the Commissioner considers whether, in view of the claimant's

10   RFC, the claimant is capable of performing work that he or she has performed in

11   the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

12   capable of performing past relevant work, the Commissioner must find that the

13   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

14   performing such work, the analysis proceeds to step five.

15       At step five, the Commissioner considers whether, in view of the claimant's

16   RFC, the claimant is capable of performing other work in the national economy.

17   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

18   must also consider vocational factors such as the claimant's age, education and

19   past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the

20   Commissioner must find that the claimant is not disabled.  20 C.F.R. §

ORDER - 5

416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits."  *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability.  20 C.F.R. § 416.935(a).  To determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing

ORDER - 6

factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability. *Id*. The claimant has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

Social Security Ruling ("SSR") 13-2p provides guidance for evaluating whether a claimant's substance use is material to the disability determination. SSR 13-2p, 2013 WL 621536, at *3 (Feb. 20, 2013). It instructs adjudicators to "apply the appropriate sequential evaluation process twice. First, apply the sequential process to show how the claimant is disabled. Then, apply the sequential evaluation process a second time to document materiality[.]" *Id*. at *6.

**ALJ'S FINDINGS**

On August 3, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging an amended disability onset date of August 3, 2017.[3] Tr.

---

[3] Plaintiff previously applied for supplemental security income on November 4, 2005, August 21, 2006, and March 26, 2012; all three applications were denied initially and not appealed. Tr. 120. Plaintiff again applicated for benefits on November 6, 2013; the application resulted in an ALJ unfavorable decision on November 30, 2015. Tr. 93-110. Plaintiff appealed the unfavorable decision, and

ORDER - 7

18, 118, 332-38.  The application was denied initially, and on reconsideration.  Tr.

233-41, 245-51.  Plaintiff appeared before an administrative law judge (ALJ) on

September 12, 2019.  Tr. 40-92.  On October 2, 2019, the ALJ denied Plaintiff's

claim.  Tr. 15-39.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since August 3, 2017.  Tr. 21.  At step

two, the ALJ found that Plaintiff has the following severe impairments: left tibial

plateau fracture; minimal degenerative joint disease of the right knee; moderate

degenerative change of the right tibiotalar joint; degenerative changes of the

lumbar spine (particularly to the lumbosacral junction); obesity; antisocial

personality disorder; attention-deficit/hyperactivity disorder; and unspecified

cannabis-related disorder. *Id*.

At step three, the ALJ found Plaintiff's impairment, including the substance

use disorder, meets Listings 12.08 and 12.11. *Id.*  The ALJ found that if Plaintiff

discontinued substance use, he would not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment.  Tr.

_____

the Appeals Council declined to review the decision.  Tr. 111-17.  This Court

granted the defendant's motion for summary judgement on May 27, 2018.  Tr.

155-72.

ORDER - 8

23.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can stand for 1 hour and walk for 1 hour at a time, for a total of standing and walking for 4 hours in an 8-hour day; he would need a sit/stand option every two hours for 1-2 minutes at the work station; he could occasionally push/pull leg and foot controls within the weight limitations of light work; he could occasionally stoop, kneel, crouch, crawl, balance, and climb ramps/stairs' he could never climb ladders or scaffolds; he could not drive commercially; he could have no exposure to unprotected heights or hazardous machinery; he could have occasional exposure to humidity, wetness, marked temperature extremes of heat/cold, and heavy industrial-type vibration, and he would miss less than 1 day of work per month. Mentally, he could have superficial contact with the public; could handle normal supervision (i.e., no over-the-shoulder or confrontational type supervision); he needs a routine work setting with little or no changes; and he cannot do fine precision-type work.

Tr. 25.

At step four, the ALJ found Plaintiff is unable to perform any of his past relevant work.  Tr. 32.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as office helper, ticket seller, and storage facility rental clerk.  Tr. 33.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 34.

ORDER - 9

1    On June 4, 2020, the Appeals Council denied review of the ALJ's decision,

2    Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes

3    of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

4                                        **ISSUES**

5    Plaintiff seeks judicial review of the Commissioner's final decision denying

6    him supplemental security income benefits under Title XVI of the Social Security

7    Act.  Plaintiff raises the following issues for review:

8         1.  Whether the ALJ properly determined Plaintiff's substance use disorder

9             is a material contributing factor to the determination of disability;

10        2.  Whether the ALJ properly evaluated the medical opinion evidence; and

11        3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

12   ECF No. 20 at 2.

13                                     **DISCUSSION**

14   **A. Evidence of Drug and Alcohol Abuse (DAA)**

15        Plaintiff challenges the ALJ's finding that his substance abuse materially

16   contributed to his limitations.  ECF No. 14 at 4-8; ECF No. 16 at 2-3.  Social

17   Security claimants may not receive benefits where DAA is a material contributing

18   factor to disability.  20 C.F.R. § 416.935(b); 42 U.S.C. § 423(d)(2)(c).  DAA is a

19   material contributing factor if the claimant would not meet the SSA's definition of

20   disability if the claimant were not using drugs or alcohol.  20 C.F.R. § 416.935(b).

ORDER - 10

Thus, in DAA cases, the regulations require that the ALJ evaluate which of the claimant's current limitations would remain if the claimant stopped using drugs or alcohol and determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2).[4]

For cases involving co-occurring mental disorders, SSR 13-2p(7) states:

a. Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve if the claimant were to stop using drugs or alcohol.

b. To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.

SSR 13-2p, 2013 WL 621536, at *9. Ultimately, Plaintiff has the burden of showing that DAA is not a material contributing factor to disability. *See Parra*, 481 F.3d at 748.

---

[4] The Ninth Circuit has noted that SSR 13-2p "contemplates abstinence periods of 'weeks' or 'months or even longer.'" *See Cothrell v. Berryhill*, 742 F. App'x 232, 235 (9th Cir. 2018) (rejecting claimant's allegation that ALJ was required to consider a 6-day period of abstinence).

ORDER - 11

1    The ALJ found Plaintiff's substance abuse, specifically marijuana use, is a

2    material contributing factor to his disability.  Tr. 21-23, 33-34.  Dr. Toews testified

3    that Plaintiff's impairments, including substance use, meet listings 12.08 and 12.11

4    in combination, but if he stopped using substances, his impairments would not

5    meet a listing.  Tr. 21-24, 62-71.  The ALJ found the testimony of medical expert

6    Dr. Toews was persuasive.  Tr. 22.  The ALJ adopted Dr. Toews' opinion

7    regarding Plaintiff's mental RFC if Plaintiff stopped substance use.  Tr. 25, 28.

8    The record provides substantial evidence to support the ALJ's finding that

9    Plaintiff used marijuana throughout the relevant period.  Tr. 76-77, 453, 455, 463,

10   480, 486, 566, 569, 585, 602, 637, 640, 643-45, 651-52, 657, 681, 696, 720.

11   Plaintiff has been diagnosed with an unspecified cannabis-related disorder.  Tr.

12   454.  The ALJ considered Dr. Toews' opinion as well as Dr. Marks' opinion in

13   finding that Plaintiff meets a listing with substance use.  Tr. 22-23.  The ALJ noted

14   that during Dr. Marks' examination, Plaintiff had multiple abnormalities, but Dr.

15   Marks stated Plaintiff may have been under the influence of marijuana or

16   methamphetamine during the examination.  Tr. 22-23, 455.  The ALJ found that if

17   Plaintiff stopped using substances, he would not be disabled, and cited to Dr.

18   Toews' opinion as support, as well as normal mental status examinations, and

19   Plaintiff's ability to previously obtain his GED.  Tr. 23-24.  The ALJ found there is

20   not a clear period of sustained absence in the record, but there were periods of

reported reduced usage during which Plaintiff had improvement. Tr. 24. The ALJ

found that when Plaintiff reported using substances weekly, instead of daily, he

denied issues with attention or listening to instructions. *Id.* (citing Tr. 672).

Plaintiff also had normal mental status examinations throughout the record and has

reported being able to play video games for a few hours at a time. Tr. 24 (citing,

e.g., Tr. 460, 464, 467-68, 477, 512, 519).

First, Plaintiff argues the ALJ erred by relying exclusively on Dr. Toews'

opinion in finding DAA is material. ECF No. 20 at 5-6. However, the ALJ

considered Dr. Toews' opinion, as well as the objective medical evidence,

including the multiple normal mental status examinations in the record, medical

evidence of improvement during periods of reduced usage, and Plaintiff's

disinterest in pursuing treatment. Tr. 21-32. Next, Plaintiff argues the ALJ erred

in failing to identify a period of abstinence, ECF No. 20 at 5, ECF No. 22 at 2-3,

however, Plaintiff does not point to any period of abstinence that the ALJ failed to

consider. The burden is on the Plaintiff to demonstrate that DAA is not a material

contributing factor to disability. *See Parra*, 481 F.3d at 748; *Owen v. Astrue*, No.

CV-09-183-JPH, 2010 WL 2079871, at *6 (E.D. Wash. May 19, 2010) (citing

*Karol v. Astrue,* 2009 No. WL 3160352 (E.D. Wash. Sept. 29, 2009)). Plaintiff's

argument that an ALJ has an affirmative duty to cite to evidence from a period of

abstinence is inconsistent with the holding in *Parra*. The Ninth Circuit rejected the

1  argument that the burden of proof can be shifted to the Commissioner on the

2  materiality issue, because such an interpretation runs contrary to the purpose of the

3  statute. *Parra*, 481 F.3d at 750. Such an interpretation of the ruling would mean a

4  claimant who presents inconclusive evidence of materiality would have no

5  incentive to stop using substances because abstinence may resolve his disabling

6  limitations and would cause his claim to be rejected. *Id.*

7  While SSR 13-2p was enacted after *Parra,* courts have continued to find that

8  despite the requirements set forth in SSR 13-2p, claimants continue to have the

9  burden of proof in demonstrating their substance use is not a material contributing

10  factor to their disability, and that a claimant setting forth ambiguous evidence of

11  the materiality does not satisfy the burden. *See, e.g.*, *Garner v. Colvin*, 626 F.

12  App'x 699, 701 (9th Cir. 2015); *see also Chavez v. Colvin,* No. 3:14-CV-01178-JE,

13  2016 WL 8731796, at *5 (D. Or. July 25, 2016), *report and recommendation*

14  *adopted,* No. 3:14-CV-01178-JE, 2016 WL 8738159 (D. Or. Aug. 19, 2016); *Quill*

15  *v. Colvin*, No. 2:13-CV-3097-JTR, 2014 WL 3608894, at *9 (E.D. Wash. July 22,

16  2014). In *Quill*, Plaintiff's counsel previously argued an ALJ erred in the DAA

17  analysis, when there was no clear period of sobriety; the court noted that SSR 13-

18  2p explicitly states that the burden remains with the claimant throughout the DAA

19  materiality analysis, and that SSR 13-2p does not require a period of abstinence.

20  *Quill*, No. 2:13-CV-3097-JTR, 2014 WL 3608894, at *9. Similarly, here, although

ORDER - 14

1   there is no period of abstinence, Plaintiff has not met his burden in demonstrating

2   his substance use is not material.

3         Lastly, Plaintiff argues the ALJ cited to insufficient evidence and

4   inaccurately portrayed the evidence in finding DAA is material.  ECF No. 20 at 6-

5   10.  Plaintiff argues he did not have a period of abstinence, and contrary to the

6   ALJ's finding that there was a period during which Plaintiff decreased his

7   marijuana use, Plaintiff argues he did not in fact reduce his use and continued to

8   use marijuana daily.  *Id.*  Plaintiff contends the ALJ's analysis of the evidence fails

9   to cite to evidence that demonstrates his impairments improved to less-than-

10  marked during periods when he reduced or abstained from marijuana use.  *Id.*

11  Again, Plaintiff shifts the burden to the Commissioner, contrary to the holding in

12  *Parra.*  Further, SSR 13-2p does not require a period of sobriety, as discussed

13  *supra.*

14        The ALJ provided an analysis of the evidence and considered Dr. Toews'

15  opinion in determining that without substance use Plaintiff's impairments would

16  not be disabling.  Tr. 23-31.  Regardless of marijuana use, Plaintiff often had many

17  normal mental status examination findings and notes of normal

18  psychiatric/behavioral findings, including normal mood, no sleep disturbances, no

19  nervousness/anxiousness, normal mood, appearance, speech, orientation, behavior,

20  affect, attitude, memory, fund of knowledge, concentration, thoughts, insight, and

judgment.  *See, e.g.*, Tr. 463-64, 468, 477, 514, 575-76.  Plaintiff argues some of the records cited to by the ALJ fall outside of the relevant period, ECF No. 20 at 9, however the records fall as little as one month prior to the amended alleged onset date, and several records fall within the relevant time period.  In June 2018, Plaintiff reported on one page that he was not spending a lot of time using alcohol or drugs, and checked the box that he was using substances weekly, though on the next page he reported daily use; the ALJ noted that during that time when he denied spending a lot of time using substances, he also denied significant symptoms of anxiety and depression.  Tr. 24, 672-73.

The ALJ reasonably relied on Dr. Toews' opinion and the objective evidence in finding DAA is material.  While Plaintiff also argues the ALJ erred in rejecting medical opinions in which the providers opined DAA was not material, the ALJ's rejection of the opinions were supported by substantial evidence as discussed *infra.* Plaintiff is not entitled to remand on these grounds.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of N.K. Marks, Ph.D.; Luci Carstens, Ph.D., P.S.; David Morgan, Ph.D.; and Irvin Belzer, M.D.  ECF No. 20 at 10-16.

As an initial matter, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate

ORDER - 16

medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 416.920c(b)(2).  Supportability and consistency are explained in the regulations:

ORDER - 17

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 416.920c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 416.920c(b)(3).

### 1.  Dr. Marks and Dr. Carstens

On August 24, 2017, Dr. Marks examined Plaintiff and rendered an opinion on his functioning.  Tr. 452-57.  Dr. Marks diagnosed Plaintiff with unspecified personality disorder, attention-deficit/hyperactivity disorder, combined presentation, and unspecified cannabis-related disorder.  Tr. 454.  Dr. Marks opined Plaintiff has no/mild limitations in his ability to understand, remember, and persist in tasks by following very short and simple instructions; moderate

ORDER - 18

limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, learn new tasks, perform routine tasks without special supervision, ask simple questions or request assistance, and complete a normal workday/workweek without interruptions from psychologically-based symptoms; and marked limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and set realistic goals and plan independently. Tr. 454-55. Dr. Marks opined Plaintiff's impairments would last following 60 days of sobriety, and the limitations were expected to last 12 months with treatment. Tr. 455.

On September 7, 2017, Dr. Carstens examined Plaintiff and rendered an opinion on his functioning. Tr. 545-49. Dr. Carstens diagnosed Plaintiff with attention-deficit/hyperactivity disorder and other specified personality disorder. Tr. 547. Dr. Carstens opined Plaintiff is not limited in his ability to understand, remember and persist in tasks by following very short and simple instructions; moderate limitations in his ability to understand, remember, and persist in tasks by following detailed instructions, learn new tasks, perform routine tasks without

ORDER - 19

1   special supervision, ask simple questions or request assistance, and complete a

2   normal workday/workweek without interruptions from psychologically-based

3   symptoms; and marked limitations in his ability to perform activities within a

4   schedule, maintain regular attendance and be punctual within customary

5   tolerances, adapt to changes in a routine work setting, make simple work-related

6   decisions, be aware of normal hazards and take appropriate precautions,

7   communicate effectively in a work setting, maintain appropriate behavior in a

8   work setting, and set goals and plan independently.  Tr. 546.  Dr. Carstens opined

9   Plaintiff's impairments were not primary due to alcohol or drug use, and opined

10  the impairments were expected to last 24 months.  Tr. 548.  The ALJ found Dr.

11  Marks and Dr. Carstens' opinions were not persuasive.  Tr. 30-31.

12        First, the ALJ noted that Dr. Marks' suspected Plaintiff was under the

13  influence of drugs at the time of the evaluation.  Tr. 31.  In conducting a DAA

14  analysis, the "key factor" for the ALJ to consider is whether the claimant would

15  still be disabled if the claimant stopped using drugs or alcohol.  20 C.F.R. §

16  416.935(b)(2).  Therefore, the fact that a medical report reflects a claimant's

17  functioning while using drugs or alcohol is a valid consideration to make in

18  evaluating a medical opinion.  *See Chavez*, No. 3:14-cv-01178-JE, 2016 WL

19  8731796, at *8.  Dr. Marks stated, "[h]e may have been under the influence of

20  meth or marijuana, although it could not be completely determined. He needs a

[chemical dependency] evaluation and treatment." Tr. 455. Dr. Marks did not

opine as to whether the current impairments were primarily the result of

alcohol/drug use within the last 60 days but opined the impairments would persist

following 60 days of sobriety. *Id.* The ALJ noted that Plaintiff's behavior at Dr.

Marks' examination, when it was suspected he was under the influence of a

substance, was different and more impaired than his behavior at appointments

where there is no documentation of substance use. Tr. 31. While Plaintiff argues

this reason was not valid, because the cited records where Plaintiff had normal

presentation were visits for physical symptoms, and Dr. Marks' examination was

consistent with Dr. Morgan's, Plaintiff does not point to any other visits where

Plaintiff exhibited the behavior documented by Dr. Marks, such as the

disorganization, agitated affect, nor off-task behavior. ECF No. 20 at 11. While

Dr. Morgan also noted Plaintiff was verbose, fidgety, and went from topic to topic

with interruptions, Dr. Morgan also found Plaintiff was cooperative, with a normal

mood and affect, and the other portions of the examination were normal as well,

including memory, perception, and concentration. Tr. 572-75. While the ALJ

relied on appointments for physical complaints to discount the opinion, Plaintiff

has not had any ongoing mental health care during the relevant period; thus, there

are no mental health records to consider beyond the two examinations. The ALJ's

finding that Dr. Marks' opinion was not persuasive because Dr. Marks suspected

1  Plaintiff was under the influence of drugs at the time of the evaluation is supported

2  by substantial evidence.

3       Second, the ALJ found Dr. Marks' and Dr. Carstens' opinions that

4  Plaintiff's degree of limitations due to his impairments would persist in the

5  absence of substance abuse was not consistent with the record.  Tr. 31.

6  Consistency is one of the most important factors an ALJ must consider when

7  determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).

8  The more consistent an opinion is with the evidence from other sources, the more

9  persuasive the opinion is.  20 C.F.R. § 416.920c(c)(2).  As discussed *supra,* the

10 ALJ noted Plaintiff had normal presentation at many examinations.  Tr. 31.

11 Plaintiff reported not feeling that he needs mental health treatment, and he refused

12 to discontinue marijuana use to continue with treatment, thus he did not receive

13 any ongoing mental health care.  *Id.*, Tr. 654, 656, 701.  While Plaintiff argues Dr.

14 Toews testified Plaintiff's sense of entitlement due to his personality disorder is

15 likely part of his rationale for being disinterested in treatment, ECF No. 20 at 12,

16 Tr. 70, Plaintiff does not point to evidence in the record that is consistent with Dr.

17 Marks' opinion that Plaintiff has marked limitations.  The ALJ's finding that Dr.

18 Marks and Dr. Carstens' opinions were inconsistent with the record is supported by

19 substantial evidence.

20

ORDER - 22

1    *2. Dr. Morgan*

2        On June 20, 2019, Dr. Morgan examined Plaintiff and rendered an opinion

3    on Plaintiff's functioning.  Tr. 572-76.  Dr. Morgan diagnosed Plaintiff with

4    unspecified attention-deficit/hyperactivity disorder and antisocial personality

5    disorder.  Tr. 573.  Dr. Morgan opined Plaintiff has no/mild limitation in his ability

6    to understand, remember, and persist in tasks by following very short and simple

7    instructions; moderate limitations in his ability to learn new tasks; marked

8    limitations in his ability to understand, remember, and persist in tasks by following

9    detailed instructions, perform activities within a schedule, maintain regular

10    attendance, and be punctual within customary tolerances without special

11    supervision, perform routine tasks without special supervision, make simple work-

12    related decision, be aware of normal hazards and take appropriate precautions, ask

13    simple questions or request assistance, maintain appropriate behavior in a work

14    setting, and set realistic goals and plan independently; and sever limitations in his

15    ability to adapt to changes in a routine work setting, communicate and perform

16    effectively in a work setting, and complete a normal workday/workweek without

17    interruptions from psychologically-based symptoms.  Tr. 574.  He opined

18    Plaintiff's impairments overall caused marked limitations, the limitations are not

19    primarily the result of substance use, and the limitations were expected to last 12

20    months with treatment.  Tr. 574-75.  Dr. Morgan also opined Plaintiff's ADHD is

ORDER - 23

marked in severity, while his antisocial personality is marked to severe. Tr. 573.

The ALJ found Dr. Morgan's opinion was not persuasive. Tr. 31.

First, the ALJ found Dr. Morgan's opinion was inconsistent with his

examination findings. *Id.* Supportability is one of the most important factors an

ALJ must consider when determining how persuasive a medical opinion is. 20

C.F.R. § 416.920c(b)(2). The more relevant objective evidence and supporting

explanations that support a medical opinion, the more persuasive the medical

opinion is. 20 C.F.R. § 416.920c(c)(1). While Dr. Morgan opined Plaintiff has

multiple marked and severe limitations, Dr. Morgan's examination documented

normal grooming, speech, attitude, behavior, mood, affect, thoughts, orientation,

perception, memory, fund of knowledge, concentration, abstract thought, insight,

and judgment. Tr. 31, 574-76. Plaintiff argues Dr. Morgan's opinion was

supported by his examination, because Plaintiff talked almost non-stop during the

interview, interrupted the examiner, jumped topics, and was fidgety. ECF No. 20

at 13. However, despite being fidgety and having an abnormal communication

style, Plaintiff still had normal examination findings. Tr. 574-76. While Dr.

Morgan opined Plaintiff has marked limitations in his ability to understand,

remember, and persist in tasks by following detailed instructions, this is

inconsistent with Plaintiff's generally normal examination, including normal

memory and concentration. *Id.* Although Dr. Morgan provided a narrative of

1  Plaintiff's history, and description of Plaintiff's symptoms, he did not provide an

2  explanation of his opinion.  Tr. 572-76.  The ALJ's finding that Dr. Morgan's

3  opinions are inconsistent with his examination is supported by substantial

4  evidence.

5      Second, the ALJ found Dr. Morgan's opinion appeared to be primarily based

6  on Plaintiff's own subjective reports.  Tr. 31.  As supportability is one of the most

7  important factors an ALJ must consider when determining how persuasive a

8  medical opinion is, 20 C.F.R. § 416.920c(b)(2), a medical provider's reliance on a

9  Plaintiff's unsupported self-report is a relevant consideration when determining the

10  persuasiveness of the opinion.  The ALJ found that Dr. Morgan's opinion appears

11  to be based on Plaintiff's subjective reports, as Dr. Morgan's examination was

12  largely normal.  Tr. 31.  Plaintiff argues the opinion was also based on Dr.

13  Morgan's review of records, his examination, and Plaintiff's history.  ECF No. 20

14  at 13-14.  However, the notes from Dr. Morgan indicate he relied on Plaintiff's

15  self-report; he wrote Plaintiff's ADHD causes Plaintiff to be "often forgetful," and

16  he is "easily distracted," but Plaintiff had normal memory and concentration on

17  examination.  Tr. 573, 576.  Dr. Morgan wrote throughout the history sections that

18  his notes were based on Plaintiff's reports.  Tr. 572-73.  Dr. Morgan noted that

19  Plaintiff reported a history of ADHD, and Plaintiff stated he has challenges

20

remembering things and does not pay attention to detail.  Tr. 572.  These notes support the ALJ's conclusion that the opinion is based on Plaintiff's self-report.

Plaintiff argues the records Dr. Morgan reviewed support his opinion.  ECF No. 20 at 13-14.  However, at Dr. Marks' examination, Plaintiff again had multiple normal findings, including normal orientation, memory, fund of knowledge, abstract thought, concentration, and insight/judgment, although he also had abnormal perception and thought content.  Tr. 456-57.  Plaintiff also argues Dr. Morgan relied on Plaintiff's criminal history in finding Plaintiff's antisocial personality disorder symptoms are marked to severe, ECF No. 20 at 14-15, however Dr. Morgan's notes also focused on Plaintiff's self-reported antisocial behavior, such as his reports of not liking people and not wanting to be around people, Tr. 572-73.  The ALJ's finding that Dr. Morgan appears to have relied on Plaintiff's self-report is supported by substantial evidence.

### 3.  Dr. Belzer

On September 12, 2019, Dr. Belzer testified at Plaintiff's hearing and rendered an opinion on his functioning.  Tr. 44-58.  Dr. Belzer testified that the records contain treatment for bilateral knee impairments, an ankle impairment, a back impairment, and obesity.  Tr. 45-48.  Dr. Belzer opined Plaintiff's conditions do not meet or equal a listing.  Tr. 48.  Dr. Belzer opined Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for up to six hours with a one

to two-minute stretch break at the workstation every two hours; stand/walk for one

hour at a time for up to four hours total in a day; he can occasionally climb

ramps/stairs, stoop, kneel, crouch, use foot controls, and crawl; he should never

climb ladders/scaffolds; he should not work around unprotected heights, moving

mechanical parts, nor operate a commercial motor vehicle; and he can have

occasional exposure to humidity, wetness, extreme heat, cold, and vibration.  Tr.

49-53.  The ALJ adopted Dr. Belzer's opinion.  Tr. 28.

　　　　Plaintiff argues the ALJ erred in adopting Dr. Belzer's opinion, because the

opinion was inconsistent with the record.  ECF No. 20 at 15-16.  Dr. Belzer

testified that he did not see documentation that a foreign body fragment remained

in the left knee, but if the fragment existed, then he would expect Plaintiff to have

significant pain.  Tr. 56-57.  Plaintiff argues the records demonstrate Plaintiff has a

fragment in his left knee, as a CT scan from May 2017 documents a fragment.

ECF No. 20 at 15-16 (citing Tr. 479).  However, Defendant argues that any error in

crediting Dr. Belzer's opinion is harmless, because after being asked about the

foreign body fragment in the left knee, Dr. Belzer was asked if someone with

"these conditions" and the "resulting pain" would miss work on the days their pain

is more significant.  Tr. 57.  Dr. Belzer testified that he would expect the person to

miss less than one day per month.  *Id.*  The ALJ incorporated the limitation into the

RFC, and the vocational expert testified that there are jobs available for someone

ORDER - 27

who would miss less than one day per month.  Tr. 84.  Plaintiff does not provide a

response to Defendant's argument.  ECF No. 22 at 11-12.  Thus, any error in

crediting Dr. Belzer's opinion would be harmless.  *See Molina,* 674 F.3d at 1115.

Plaintiff is not entitled to remand on these grounds.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 20 at 16-21.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

alleged; [the claimant] need only show that it could reasonably have caused some

degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c).  The ALJ is instructed to "consider all of the evidence in an

ORDER - 29

individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that if Plaintiff stopped substance use, Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr.  26.

### 1. Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 26-29.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

First, the ALJ found Plaintiff's physical symptoms were not as severe as alleged.  Tr. 26-28.  While Plaintiff complains of significant limitations due to his

ORDER - 30

knee impairments, the ALJ noted that imaging demonstrated abnormalities, but

Plaintiff continued to smoke despite being advised it would affect his knee healing,

and Plaintiff continued to have a normal gait.  Tr. 27 (citing Tr. 440, 460, 462,

478-79, 482.  Plaintiff's knee was stable on examination in June 2017, and he was

encouraged to have physical therapy, Tr. 27 (citing Tr. 475, 520), and in

September 2017, Plaintiff's lower extremity examination was normal, Tr. 27

(citing Tr. 579).  Plaintiff complained of ankle pain, but imaging showed only

moderate changes and his June 2017 examination demonstrated decreased range of

motion but an otherwise normal examination, Tr. 27 (citing Tr. 468, 502), and in

September 2017, Plaintiff's ankle range of motion was normal, Tr. 27 (citing Tr.

578).  Plaintiff complained of back pain, and while imaging demonstrated some

lumbar degenerative changes, disc spacing was normal and there were no acute or

high-grade lesions, and Plaintiff's thoracic spine was normal.  Tr. 27-28 (citing Tr.

582, 614-15).  Plaintiff argues the ALJ erred in failing to consider his subjective

pain, however the ALJ reasonably considered the objective evidence.

Second, the ALJ found Plaintiff's psychological symptoms were not as

severe as alleged.  Tr. 28-29.  Plaintiff has had minimal mental health treatment

through the relevant period, as discussed further *infra.*  Tr. 28.  At the examination

where Plaintiff had the most abnormalities on examination, the provider stated

Plaintiff may be under the influence of methamphetamine or marijuana.  Tr. 22-23

(citing Tr. 454-56). At another visit when a provider thought Plaintiff was under the influence, Plaintiff had difficulty focusing. Tr. 23 (citing Tr. 652). At visits where Plaintiff was not documented as potentially under the influence of a substance, Plaintiff was generally noted as alert and oriented, with a normal mood, affect, behavior, judgment, and thought content. Tr. 23 (citing Tr. 464, 466-67, 477, 514, 519, 583, 586, 609, 636, 638). This was a clear and convincing reason, along with the other reasons offered, to reject Plaintiff's symptom claims.

### 2. *Activities of Daily Living*

The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's activities of daily living. Tr. 27-31. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13.

ORDER - 32

1    Despite complaints of significant knee symptoms, Plaintiff reported going

2  on a "really long" walk and that it felt really good, and he has reported being able

3  to walk a mile and do activities around the house.  Tr. 27 (citing Tr. 130, 462).

4  While he alleges he has difficulty being around others, he also reported taking the

5  bus to go to a World Cup game.  Tr. 29 (citing Tr. 604).  Plaintiff reported being

6  able to play video games for a few hours at a time.  Tr. 30 (citing Tr. 640); Tr. 460.

7  Plaintiff can go places such as the grocery store by himself.  Tr. 31 (citing Tr. 377).

8  Plaintiff has reported being able to help clean the house and do household chores.

9  Tr. 27 (citing Tr. 471).  Plaintiff argues he injured himself doing chores, but

10  Plaintiff reported he "works for his parents cleaning their house and doing

11  household chores," and on one occasion, he stated he pulled his hamstring.  Tr.

12  471.  Plaintiff reported being able to prepare simple meals, use a weed eater and

13  lawn mower twice per week, do laundry, and handle money.  Tr. 375-77, 479-80.

14  Plaintiff argues his activities are not inconsistent with his allegations.  ECF No. 20

15  at 19-20.  However, the ALJ reasonably found Plaintiff's activities are inconsistent

16  with his allegations of disabling limitations.  This was a clear and convincing

17  reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

18    *3.  Lack of Treatment*

19    The ALJ found Plaintiff's symptom claims were inconsistent with his lack of

20  treatment.  Tr. 28.  An unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be considered when

evaluating the claimant's subjective symptoms.  *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir. 2007).  And evidence of a claimant's self-limitation and lack of

motivation to seek treatment are appropriate considerations in determining the

credibility of a claimant's subjective symptom reports.  *Osenbrock v. Apfel*, 240

F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th

Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking

treatment).  When there is no evidence suggesting that the failure to seek or

participate in treatment is attributable to a mental impairment rather than a

personal preference, it is reasonable for the ALJ to conclude that the level or

frequency of treatment is inconsistent with the alleged severity of complaints.

*Molina*, 674 F.3d at 1113-14.  But when the evidence suggests lack of mental

health treatment is partly due to a claimant's mental health condition, it may be

inappropriate to consider a claimant's lack of mental health treatment when

evaluating the claimant's failure to participate in treatment.  *Nguyen v. Chater*, 100

F.3d 1462, 1465 (9th Cir. 1996).

Plaintiff has not received any ongoing mental health treatment throughout

the relevant adjudicative period.  Tr. 28.  During the only treatment he received,

Plaintiff reported he was being seen to continue receiving benefits.  *Id.* (citing Tr.

642, 645, 651, 681).  Plaintiff reported not being interested in mental health

ORDER - 34

treatment and not feeling he needed it.  Tr. 28 (citing Tr. 629, 642, 654, 656).

Plaintiff refused to attend groups or weekly individual sessions.  Tr. 28 (citing Tr.

642).  Plaintiff was discharged from treatment due to his lack of interest in

engaging in treatment.  Tr. 28 (citing Tr. 569).  Plaintiff also refused to discontinue

smoking marijuana to comply with chemical dependency treatment.  Tr. 657.

Plaintiff argues the ALJ erred in rejecting Plaintiff's statements due to his lack of

treatment, because the ALJ failed to consider that Plaintiff's personality disorder

impacted his motivation to obtain treatment.  ECF No. 20 at 18-19.  However, any

error in the ALJ failing to consider the reasons Plaintiff did not seek treatment is

harmless, as the ALJ offered other supported reasons to reject Plaintiff's symptom

claims.  *See Molina,* 674 F.3d at 1115.

Further, the ALJ also considered that Plaintiff only sought mental health

treatment for the purpose of obtaining benefits.  Tr. 28.  Evidence of being

motivated by secondary gain is sufficient to support an ALJ's rejection of

testimony evidence.  *See Matney ex rel. Matney*, 981 F.2d at 1020.  Plaintiff stated

several times that he was only attending appointments to obtain financial benefits.

Tr. 28, 640, 642, 645.  Plaintiff asked for a letter of completion to be sent to his

case worker, although he had not completed treatment, so he could continue

receiving benefits.  Tr. 642, 645.  This was a clear and convincing reason,

supported by substantial evidence, to reject Plaintiff's claims.

ORDER - 35

*4. Work History*

The ALJ found Plaintiff's symptom claims were inconsistent with his work history. Tr. 29. Evidence of a poor work history that suggests a claimant is not motivated to work is a permissible reason to discredit a claimant's testimony that he is unable to work. *Thomas*, 278 F.3d at 959; SSR 96-7 (factors to consider in evaluating credibility include "prior work record and efforts to work"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. § 416.929 (work record can be considered in assessing credibility).

Plaintiff worked minimally and inconsistently even before his amended alleged onset date. Tr. 29 (citing Tr. 353-62, 340-44). Plaintiff has also reported an extensive criminal history and multiple periods of incarceration and has admitted his criminal history contributes to his difficulty working. Tr. 29 (citing Tr. 396, 454, 573). The ALJ noted that the evidence raises the question as to whether Plaintiff's unemployment is due to his alleged disabling impairments. Tr. 29. Plaintiff argues his criminal history and disability in combination prevent him from working and thus this was not a clear and convincing reason to reject his symptom claims. ECF No. 20 at 21-22. Plaintiff had multiple years prior to the alleged onset date during which he had zero earnings, and Plaintiff has never earned SGA for an entire year. *See* Tr. 340-44. This finding is supported by

substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED January 24, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37